We'll, uh, continue with argument in United States v. Castro. Please be seated. Thank you. Good morning, Your Honors. Matt Larson of the Federal Defenders for Mr. Castro. Your Honors, the agent in this case misled the judge into issuing the search warrant. The agent swore to the judge that her agency had downloaded child pornography from Mr. Castro's computer, but the agent knew and omitted that she had looked for any such download and found absolutely nothing. She said, I'm sure I tried to find it and wasn't able to find the folder containing the downloaded files. This court has made very clear that when an individual makes an assertion in a warrant application that there's obvious reason to doubt, it evinces a recklessness for the truth, which is the first prong of the Frank's test. It's made very clear in the Perez case where then District Judge Chin said, saying that a fact is true despite knowing that there's reason to doubt is true, is evidence of recklessness. The government ignores the Perez case, which this court endorsed in the Correia's decision. And these are all set out in our briefs. Besides making the reckless assertion, the agent also made a number of omissions. Besides omitting that she had looked for these allegedly downloaded files and found nothing, she also omitted the fact that what she said were the file descriptions came not from her viewing anything that she had obtained from Mr. Castro, but rather from her viewing files in an internal DHS database. She also omitted that the only basis she had for seeking this warrant application was the website's allegation that her system had downloaded the files. And just to try to break it down, because I myself was trying to understand the technology in this case when I first got the appeal. Basically what happens is this. DHS uses a software program, Roundup Ares, and it goes on to public spaces of peer-to-peer networks, and it looks for potential contraband. If it finds it, it downloads the files to a DHS computer for further review. Now, this Roundup Ares system has been validated, has been tested for reliability, and in fact, the judge here, there was evidence that the Roundup Ares system was reliable. That's not the system that the agent relied on. What the agent relied on here was a third-party website, a website developed by a retired police officer, a website that is not a piece of DHS technology, and a website that is separate from the Ares Roundup software. Is it fairly called a law enforcement report? We say it's cryptical. I'll grant that. I think it's cryptic because, yes, the report was a half-page printout. So I'll grant that it's a law enforcement report to the extent that it's a report that was produced for law enforcement. But it is non-government. I'm sorry? It's non-government, isn't it? Correct. It's run by, as you said, a retired, of course, you can have a retired policeman who is also doing other official duties, but he just runs this as a hobby, is that it? As to whether he charges or not, I'm not sure, but it's a service that he decided he would try to provide. And the idea of this website is to say, when the Ares Roundup program actually does download suspected contraband to a DHS computer, this website's only function is to give an alert. Essentially, you've got mail. That's what happened in this case. Agent Bourne typed in the IP address for Mr. Castro's computer. She got an alert essentially saying, you've got mail. You have in your possession on a DHS computer alleged contraband from Mr. Castro's computer. How about the identifying hash number on it? At what point? The alert lists the hash values, but all the hash values are are descriptions of the content of the file. So this alert said... Isn't each one a unique hash value?  There can be multiple copies of Lolita or Lady Chatterley's Lover. It's a unique identifier in that it's the title or it's a hashtag, but there can be many copies of this. So it identifies the content. Precisely. So what the alert essentially said is not just, you've got mail, but you've got suspected contraband, as opposed to something innocuous. So when the agent went to her own computer to actually see if, in fact, she had mail, she found nothing. She withheld this fact from the judge. She concealed this... She did do more, though. Didn't she go to the library to make sure to double-check the... That's the government's argument, Your Honor, but respectfully... That's why I'm asking you to answer it. Yes. What she did was take the hash values and look them up in the library. Because if you look at a hash value, you don't know what it means. It's a long string of numbers and letters. It's not apparent what it is. So you have to look it up to see what it relates to. So she looked it up in her own database, and she found that it contained a hash number. And it corresponded to illicit material. Now, why is that enough? The question here is, that is what she did. Right. And I understand your position is that she was dishonest when she said whatever it was. But why did she need more than that in order to get... It's not enough in this specific case because the source, namely the website, proved apparently unreliable. And we set out a number of hypotheticals in our brief to try to illustrate... Unreliable, not as in inaccurate, but in this instance, it didn't download the files according to its ordinary functionality. Right. Because it's not your claim that the hash values weren't accurately reported. Right. Well, actually, our claim is we place no stock in this alert because the alert said you have mail. And when the agent went to see whether she did, she found nothing. So as to the contents of that mail, we can place no stock in that allegation either. Because the primary assertion here was that a download had happened. When she looked to see if one actually did, she found nothing. So as to what the contents of that download might be, we certainly place no stock in it. So we should pay no attention to the fact that it turned out to be accurate. I don't know that it turned out to be accurate, Your Honor. I don't know that those files were ultimately found. And if they were, of course, it would be immaterial because the question in this Frank's appeal is whether there was recklessness and materiality. We don't think of what was ultimately found after the warrant issued. We ask, was the warrant properly issued? You have to argue that if the warrant affidavit were corrected to say exactly what in fact did happen, with all these linkages, which I grant you are pretty complicated, that it would not support a fair probability that evidence of a crime. That's right, Your Honor. When corrected, it doesn't generate probable cause. And you're saying because there's a break in the linkage between Roundup Aries and the actual contraband. What I try to analogize to in a couple of examples in the briefs is this is like any other situation where a source makes, a police source makes an allegation of criminality. In this case, however, the allegation of criminality was investigated, found unsubstantiated. The fact that the allegation, and to answer Your Honor's question, the fact that these hash values corresponded to contraband rather than illicit material is beside the point. Let me give you an example. The source comes to the cops and says, my neighbor is dealing drugs in his house. The cops investigate. They surveil the house. This is much like the McCauley case in our briefs. I'm just wondering whether it's fair to line up, to compare a mechanical, electronic thing which has no motivation to lie with a human source, which the whole problem is that it might have a motivation to lie. It has no motivation to lie, but it certainly may have the possibility for error. That's another critical piece of information in this case. Unlike in Thomas, where the piece of software at issue had been thoroughly tested, vetted, and found by the judge after Frank's hearing to be reliable and not prone to any erroneous information, there was no such evidence proffered in this case. Despite our saying several times below, this seems to be inaccurate because... Obviously saw in Roundup Aries with the two hash numbers because she went and she went to their library and accessed them and ascertained that they were child pornography, right? Just to be clear, she did not go into Roundup Aries, the software program at all. The library is simply a library of images that they maintain. She has to type in the numbers in order to see whether it's contraband. Right. So she must have... How did she get the numbers that she typed in at the library? The alert. The alert said... The alert came from whom? The website. Roundup Aries? The untested... ICACOPS. Yes, precisely. The ICACOPS website, which is not part of the software program, which is a third party website, which has never been validated, and which... You're saying though, if I understand it, that as Judge Jacobs is saying, she got the hash values from the website and ordinarily, and she represented that there was a download as well. In this instance, there was not the download as well, but there were the hash values. She went to another website to determine what was the content of the documents referenced by the hash values. So in this instance, there was something other than the ordinary functionality. But as Judge Jacobs is saying, a corrected affidavit that disclosed that ordinarily, there is a download. In this case, there wasn't, but there was the ordinary transmission of the hash values, which turned out to reference contraband. Why that would not have been an adequate basis for the issuance of the search warrant. It's not for the same reason. If a source says, my neighbor is dealing drug... But a source, again, I would adopt Judge Sachs' skepticism that an individual person is a source or a tipper, different from the operation of a computer. And something with no motive to lie, but with room for error, a drug dog. Let's say a drug dog alerts to a particular car. The car is searched. No contraband is found. You wouldn't then say to a judge, oh, I want to search the car because the drug dog alerted to there being contraband in it, as opposed to something licit. What if in this computer program instance, there are two elements of its functionality. One is disclosure of the hash values. The other is nice additional feature, but not necessary feature. Download right here, as opposed to it to save you the trouble of having to go to the DHS website. Why isn't just the hash value sufficient? Because again, all the hash values are a description of the alleged download of contents. So it's saying, not only do you have mail, not only has something been downloaded to your computer, but specifically, here's what was downloaded. Here are the images that were downloaded, and they happen to be contraband. But again, when an officer investigates an allegation of criminality, as in this case, and finds the allegation to be unsubstantiated in here, that there's no download at all. The fact that the download was alleged to contain illicit material, rather than licit material, does not provide a sound basis for concluding that there's probable cause to search. Thank you. You've reserved a couple minutes for rebuttal. We'll hear you then, sir. May it please the Court, Judge Schofield's decision to deny the motion to suppress, to deny the motion for reconsideration, and to deny the motion for a new trial should be affirmed. I'd actually like to start talking about the technology, just to make sure it's very clear how this works. Roundup Ares is an investigative software tool that goes on to peer-to-peer networks and automatically looks for files that are known to be suspected child pornography. The way the program knows which files to look for is a hash value. A hash value is not a title to a novel. It's a unique identifier. And any two files that have the same hash value are necessarily identical. Multiple witnesses testified to that with expertise during the trial. When Roundup Ares detects a file that's being made available by a user of a peer-to-peer network, it automatically attempts to conduct a download from that IP address. If a download is successfully conducted, it is then that Roundup Ares is programmed automatically to send a message to ICAC COPS, which is a database that only law enforcement can access. And that message says what this document that's in the record says, Ares download completed. And the only record evidence about what those words actually mean come from the creator of ICAC COPS, and he testified. It means that the download by Roundup Ares occurred. Now the hash value that's listed here is a unique identifier. If an agent finds a file in their own library that's identical to the hash value that's in this report, those are the same file. And if an agent goes and looks at that file, it's the same as looking at the actual downloaded file. There is no material distinction, bit for bit. When the warrant affidavit said, from a review of written law enforcement reports, what written law enforcement reports prepared by who or what was being referred to? As Judge Schofield found, the ICAC report is a written law enforcement report. ICAC COPS is only accessible to law enforcement. It's a tool designed for law enforcement officers to de-conflict with each other, among other things. Does law enforcement suggest people employed by some agency of the state? It's a tool that was designed for law enforcement, similar to the Thomas case. In the Thomas case, the CPS tool that was at issue in the Thomas case was only designed for law enforcement. And this court ultimately decided that, in Thomas, that the fact that yes, it was created by a third party rather than created by a government entity is immaterial. I would also- Is that something that a magistrate judge would want to know? Even if you grant every permutation of the defendant's arguments and you correct the affidavit in the way they've asked, ultimately, there remains probable cause. Because all that's required under Thomas is that you have a site like ICAC COPS that aggregates information the same way CPS did, that says that a download happened and that an agent actually went and did look at these files themselves by conducting a hash value analysis, which is what the agent did in Thomas. I would also note, a download itself is not even required under Thomas. All that's required is that the IP address is making files available for sharing in the first place. So- But don't you need some- go ahead. Don't you need some showing of reliability of the system, of its use in the past? I mean, the warrant application here was very bare bones and there were significant omissions. And this was a function- misfunction in the absence of the downloads that creates some question about whether it was malfunctioning in some way, whether it was reliable according to its ordinary functioning. Why shouldn't we require more of an agent seeking to access someone's computer? Well, first of all, as was stated in Thomas, this is really a type of function that aggregates information, automatically scans. And this court drew the distinction between these types of computer programs and drug-sniffing dogs. There's really- they aren't the same because with a drug-sniffing dog, you need to actually establish the reliability of the dog. But secondly, the fact that the agent couldn't find the downloads in April 2014 when the downloads happened in December 2013, and Agent Bourne testified, she used ICAT cops regularly in her practice. That was something that she used regularly when conducting investigations. That doesn't in and of itself- He testified to that effect, but that wasn't provided in the warrant application. That doesn't in and of itself call into question the entire reliability of the whole system. I would also note, these are related functions. Roundup Aries and ICAT cops relate to each other. They're not like totally separate things, respectfully. So the message, Aries download completed, you know, it's not just coming out of the ether, it's not just some random third-party website. That's a message that, as Detective Irvely testified, comes from the Roundup Aries program that is described in some depth in the affidavit. This is just a written printout of a piece of information that Roundup Aries is automatically programmed to send out. The affidavit said that Roundup Aries, which is the software described in the affidavit, it's the software designed by and for law enforcement to search peer-to-peer networks, as you have both described, it said it had downloaded four files, but it didn't download the four files. No, the government does not concede that at all. Agent Bourne believed that the files had been downloaded. Had been downloaded. Why would she have had to search the library? Sure. Because if they were downloaded, she could see it. Let me make two points. One, not being able to find the downloads months after they occurred does not necessarily mean the downloads never happened. But two, even if we grant, okay, a corrected affidavit that says, Roundup Aries sent this message to ICAC Ops. ICAC Ops says Aries download completed. It reflects the hash values. I went to look for the downloads. I was not able to find them. Nonetheless, I looked at the hash values reflected in this report and satisfy myself their child pornography. Under Thomas, that's sufficient to provide probable cause. Because, in part, this Court doesn't require downloads. And secondly, you can take a written law enforcement report like this that, yes, is generated by a third-party provider, just like the CPS tool. You can rely on it. And you can then go and look at the files. But just the mere fact that the government could not actually find the files does not in and of itself mean that the downloads never happened. We have a finding here that there was no intentional misleading of anybody. And that's reviewed for clear error, Your Honor. And Judge Schofield had the benefit of actually personally observing the testimony of Special Agent Bourne at trial on these very questions when she made that finding in denying the motion for a new trial. That's entitled to some deference. Can I ask you almost a perverse question? But while you're here, we see so many of these cases, rather disturbing. And there's a certain similarity among them. And what I can't understand is, with all this advanced technology, how can any two people use a peer-to-peer? And this may be classified, which I don't want either. But how can any two people use a peer-to-peer network to exchange child pornography and not get caught if everybody is watching? Is there an answer to that? Is there an acceptable answer that you can give? All I can say is what's in the record, Your Honor, which is that there are numerous investigative tools out there that automate the functionality. I would just also, on the question of Agent Bourne's state of mind, that is reviewed for clear error. It's entitled to deference. I would note, you know, Agent Bourne did not, given that the standard is, you don't even have to say that downloads occurred to prove probable cause. That is relevant to her state of mind. Agent Bourne could have said, I see that this IP address is making files available for sharing. I looked at the hash values. That would have been enough. And as Judge Schofield correctly found, yes, there were omissions, but there's no indication that those omissions were intentional. Agent Bourne testified, I believe the ICAC report is something I can rely on. It says Aerie's download completed. Her belief was she could take it to the bank. Detective Erderly is the only person who testified about what this all really means, and he created ICAC Ops. He had no uncertainty. Aerie's download completed means that the download happened is exactly what he testified to. Let me ask another question. You say that Thomas controls, but Thomas seemed to deal with a program that's more the equivalent of Roundup Aerie's, that's more, that's kind of closer to the center of law, official law enforcement operations. This dealt with a third-party private provider, which might be of less presumptive validity and reliability. Why am I wrong about that? Thomas was a third-party tool created for law enforcement, and what the functionality that was used in that case did was it scanned peer-to-peer networks to show, oh, this IP address is making this file with this hash value available. It was aggregating publicly available information. That's how the Second Circuit described it. That's really no different than this case. What this Roundup Aerie's does is it looks for files of known child pornography, attempts to download them, and then, yes, it sends a message to this database that's used by law enforcement that communicates that the download happened. But the Roundup Aerie's tool and the ICAC Ops tool work together, they're programmed to work together, as are many other investigative tools. So it is quite similar to CPS. Might there be a similar tool that is, in fact, unreliable, that is subject to bugs of one kind or another? Sure, it's hypothetically possible, but Agent Bourne had no reason to believe that this tool, which she had used many times, wasn't reliable. And the fact that the record evidence is that the program was designed to automatically— Roundup Aerie's was designed to automatically send a message to ICAC Ops  That is true. But that, in and of itself, does not call into question the entire reliability of the entire system. Thank you. Thank you. To speak to that last point, Your Honors, the agent had a glaringly obvious reason to think the website was not reliable, because the download that it claimed occurred could be found nowhere on her system. She might have just not been a very good searcher, also. Well, the evidence is to the contrary, Your Honor, because she testified that her normal practice was when she does get an alert from the website, she will go to her computer on the DHS system and see if, in fact, the download occurred, and then to look at the files themselves. She said, I would have done that here. The reason I didn't do it here is because I couldn't find the download, and that's why I went to our internal library and just looked up the names of these files. There was no moment that it was, I guess, a couple of months later that she went to look for the download? There's utterly no evidence, Your Honor, that the time lapse is at all material in this case. There was no evidence put in that, oh, from time to time, we delete files, and these files were included in a purge. Nothing like that was offered. If there had been such evidence, this might be a different case. But here, the government had every opportunity to explain this discrepancy, and it failed to do so. Not only did the government fail to do so, the agent chose to disclose it, to conceal it from the judge. And I just want to make three final points in closing to address what I think... You say conceal. You mean she just didn't disclose it? Conceal the fact that, despite swearing a download had occurred, she looked for the download and found nothing. That is a fact that any reasonable judge would want to know when a judge is being asked to grant a search warrant for someone's home and the only thing the agent is relying on appears to be, for as far as human investigation can tell, unreliable. Three questions that Your Honor has raised that I just want to address briefly in rebuttal. First, why are the hash values not enough? Well, the inventor of the website said they're not enough. Mr. Erderly, who invented this website that the agent relied upon exclusively, when he asked, if all you had was this alert that a download would occur, would you seek a warrant from a judge? And this retired policeman said, no. I train officers in using this that this is simply a de-confliction tool. It's a tool designed to make sure that multiple agencies aren't pursuing the same suspects. It is not a tool that sets up probable cause. What does establish probable cause is concrete evidence. The individual access to contraband, such as downloaded files, or evidence of an attempted download. Could you go to them but to a different place, to the library to find them? Again, I just want to be very clear, and I want to analogize, because for my own purposes the technology is a bit opaque. Just to analogize very clearly, imagine we're back in the days when communist or other literature was contraband in this country. And there's an allegation, someone tells the police, or they receive a note in the mail, that person X has such contraband. Or excuse me, better yet, the police receive a notification. Oh, I've deposited in a police mailbox contraband that I got from John Smith's house. And the contraband is specifically Lady Chatterley's Lover, or any other number of banned books. The officer then goes to the police mailbox. There's nothing there. Oh, this alleged download, this alleged obtaining of contraband, there's nothing really here. But wait, what was allegedly delivered to the police office was illicit. I can go into my library and look up the names of these books and realize that they're illegal and they're contraband. Therefore, I'm going to go to a judge. I'm not going to tell the judge that I looked in the police mailbox and found nothing. I'm simply going to tell the judge, someone said that contraband from person X was delivered to the police station. I'm not going to disclose that that didn't really happen. All I'm going to tell the judge is that it was delivered and that it was contraband and list the names of the specific books which are illegal. And I'm going to ask for a warrant to search that person's home. Now, if that warrant application had been corrected to say what the truth really was, namely, all right, this person allegedly has contraband which has come into police possession. But when I look to see if we really have it, I could find nothing. No warrant would issue. The fact that the hashtag... What reason did the inventor give for saying the hashtag would not be sufficient? He did not... The hash value, sorry. The hash value. He did not give a specific reason, but the larger reason was that he designed the website again as a deconfliction tool. And the website does not, as my colleague was talking about, the website is not the software program. The website does not interact with peer-to-peer systems. The website does not connect to the internet and search people's computers. All the website is meant to do is to send an alert to law enforcement when contraband is allegedly downloaded to a police computer. It's a deconfliction tool so that an officer can go online to the website, type in somebody's IP address... I'm sorry, that's interesting. How does it get there? How does it select? I mean, how does it go off into the vast internet and find these particular messages? The... Well, you mean how does the website come to give an alert? How does it... Yeah, how does it get there in the first place? The testimony was that the Roundup Ares program, part of the design and part of the design of the website was that when a download is completed, an alert will be sent to the website. Now, that's what it was designed to do. It comes... It comes from the... The alert comes electronically from the internet. It does not come from another law enforcement. That's what it's designed to do, Your Honour. And again, I don't want to get... I don't want to put too much faith in computers and technology before we hand over our Fourth Amendment rights because the computer said so. I think it's very important to know that the technology we rely on is reliable. In Thomas, there was a Franks hearing where the judge looked at the software in question and found it reliable. Here, not only was there nothing like that, but even if there had been evidence, and this is the larger point, Your Honours, even if there had been evidence that this website in the past had given accurate alerts, like my colleague says, the officer had relied on it before. We don't know if she relied on it accurately or not, but she had at least relied on it. Even if there had been evidence that it worked reliably in the past, that does not clear up the glaring problem in this case. And again, this is a very narrow case. I'm not asking for a general ruling that this technology can never be used to investigate alleged criminality. All I'm saying is that on the record here, the website said, you've got mail. The police go to their mailbox. They have no mail. Oh, that's odd, right? That's odd. You know, the website is telling me I have something, but I don't. Don't you think that's something the judge would want to know? And if the judge did know that, and if you had reason to doubt the reliability of the alert in this case, why would you place any stock in the fact that what it was alleging was a download of illicit rather than licit material? Again, if you're saying the man is growing pot next door versus running a daycare center, that's neither here nor there. What matters is whether there's concrete evidence establishing probable cause that there's contraband on the site. Thank you. Thank you both. We'll reserve decision.